CITY OF ASHLAND, Appellant, vs. THE CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Respondent.

*November 24, 1899 — February 2, 1900.*

*Streets: Dedication: Acceptance: Municipal corporations: Ultra vires:.*
    *Contracts: Estoppel: Vacation of streets.*

1. The filing by the owners of land of a plat, showing streets, in the
way pointed out by statute, is a dedication to public use, and ac-
ceptance is in time, if made before the offer to dedicate is with-
drawn, whenever the time arrives that the part of the street in
question is required for actual public use.

2. Mere nonuse of a street for any period of time will not operate as
an abandonment of rights conferred by a proper dedication, and,
until the time arrives when the street is needed for actual use, all
persons in possession hold subject to such rights.

3. Where a city and railway companies entered into an agreement by
which the city agreed to vacate a street, and the companies to pay
for certain specified improvements of streets, such agreement can-
not be the basis of an estoppel. The city had no power to make
any such contract, and its resolutions of acceptance and ordinance
to carry it out were *ultra vires* and void.

4. A city may be estopped from claiming that a given locality is a
street, but the testimony to establish such estoppel must be clear,
distinct, and of such a character as to amount to a fraud to permit
it to claim otherwise, and then only when some affirmative action
has been taken, or there has been some great negligence or delay
with relation to some matter upon which the parties had a right
to rely.

5. Streets can be vacated only by compliance with statutory require-
ments, and when the charter does not prescribe how such power
can be exercised, the provisions of sec. 904, Stats. 1898, are to be
followed.

6. Where the county board made an ineffectual attempt to vacate a
part of a dedicated street, the levy and collection of taxes on such
portion by the town authorities does not necessarily affect the
rights of the public.

APPEAL from a judgment of the circuit court for Ashland
county: JOHN GOODLAND, Judge. *Reversed.*

In 1857 the owners of the land covering the street in con-

City of Ashland vs. The Chicago & Northwestern R. Co.

troversy platted the same, and filed and recorded such
plat in the proper register's office. The street in question
was named Madison avenue. In 1887 the common council
of *Ashland* changed its name to Fourth avenue West. Ac-
cording to the scheme of the plat, the streets running paral-
lel with the shore of the bay are called " streets," — the
first being named Front street; the second, Second street,.
and so on in numerical order, extending back from the bay.
The streets running at right angles with the streets afore-
said are called "avenues." · Madison avenue, now known
as Fourth avenue West, runs in a southerly direction from
the bay for nearly one and one-half miles, and connects the
residence with the business portion of the city. That por-
tion of Fourth avenue West more particularly in question
in this action lies between Third and Sixth streets. That
portion of Fourth avenue between Front and Third streets,
prior to 1890, had been graded and planked, and generally
used for street purposes. That portion lying to the south-
ward of Sixth street had also been graded and improved
prior to said date. Prior to 1892 that portion of Fourth
avenue between Third and Sixth streets had never been im-
proved. During that year the city caused a sidewalk to be
built on the east side of Fourth avenue from Third to Fourth
street, and the west side of said avenue from Fourth to·
Sixth street, which was used by pedestrians as they saw fit.
The railroad track of defendant enters the city limits on the
east, and extends westward across and over Fourth avenue
between Third and Sixth streets. The Northern Pacific
and Wisconsin Central Railroads also have tracks running
parallel with defendant's on the north. Early in 1896 the
defendant and other railroad companies removed said side-
walks. They were replaced by the city and maintained
until February, 1897, when they were again torn up by the
companies, and a fence erected across said avenue between
Fourth and Sixth streets, completely obstructing it. The

city brings this action to compel the defendant to remove the fence and restore the sidewalk, and asks an injunction restraining the defendant from obstructing the avenue.

The defendant set up, and the court found, that in the year 1860 the owners of the plat presented a petition to the county board, asking for a vacation of a portion of said plat including the part involved in this suit, and by resolution the board attempted to vacate it; that after the date of said resolution, and for about twenty years, the proper officials assessed said property as acreage property; that said street, between the north line of Sixth street and a point halfway between Third and Fourth streets, was never worked or traveled by teams; that prior to the organization of the city of *Ashland* the town authorities erected a hose house between Third and Fourth streets, in the limits of Fourth avenue; that prior to 1887 the Milwaukee, Lake Shore & Western Railway Company, to whose rights the defendant succeeds, laid its tracks across Fourth avenue, as before stated; that in said year said company and the other railway companies mentioned entered into a contract in writing with the city whereby it was agreed that the city should take the necessary steps to vacate that part of Fourth avenue lying between the north line of Sixth street and a point halfway between Third and Fourth streets, and in consideration of such vacation the railroad companies agreed to defray the expense of grading and constructing an undercrossing on Vaughn avenue, being the next street west of Fourth avenue, and to pay the expenses of a box culvert to drain a street; that the said Lake Shore Company paid its proportion of said expenses to the city (shown by the evidence to be $782.97), and performed all the stipulations of its said agreement; that on December 1, 1887, the city passed an ordinance in form vacating said part of said avenue. This ordinance was conceded to be invalid because of failure to observe charter regulations. The seventh finding is to the

effect that said company, relying upon the action of the county board in 1860 and of the common council in vacating said street, laid out and expended large sums of money in the construction of its yard, and in building an iron bridge over Vaughn avenue, and in paying the expenses of excavating said avenue and constructing said box culvert. On June 26, 1888, the council passed an ordinance repealing the ordinance of December 1st, and thereafter constructed the sidewalks before mentioned. The money paid to the city by the Lake Shore Company was not paid until after the repeal of the ordinance attempting to vacate the street.

The trial court decided that the city was estopped, under the circumstances, from claiming that the part of the street in question was not vacated, and entered judgment dismissing the complaint. Due exceptions to the findings were filed. The plaintiff appeals from the judgment.

For the appellant there was a brief by *E. F. Gleason*, attorney, and *Gleason & Sleight*, of counsel, and oral argument by *Richard Sleight*.

For the respondent there was a brief by *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, and oral argument by *John T. Fish*.

The following opinion was filed December 15, 1899:

BARDEEN, J. It was conceded on the argument that the action of the county board in 1860, and the action of the city council of *Ashland* in 1887, in attempting to vacate the part of the street in question were void and of no effect. This leaves the main question to be considered, whether the city is estopped from claiming this part of the street to be a public highway. Before proceeding to determine that question, we will notice a point raised by the defendant. It is said that there is no evidence in the record to show that the city has ever accepted that part of the street attempted to be vacated as a street. We do not see how the defend-

ant is in a position to raise that question. The petition of the railroad company and subsequent agreement with the city, relied upon as creating an estoppel, recognize the existence of this street. If the facts shown as claimed are sufficient to constitute an estoppel, this question is of no importance. If they are not, then, under well-settled legal principles, the city was not obliged to signify its acceptance until the time arrived when that part of the street would be required for use. *Reilly v. Racine,* 51 Wis. 526; *State v. Leaver,* 62 Wis. 387; *Racine v. C & N. W. R. Co.* 92 Wis. 118. The filing by the owners of the land of the plat showing the streets, in the way pointed out by the statute, was a dedication to public use. Acceptance is in time, if made any time before the offer to dedicate is withdrawn. *Price v. Breckenridge,* 92 Mo. 378; *White v. Smith,* 37 Mich. 291. No legitimate proof was offered showing a withdrawal of this dedication. On the trial it was stipulated that between Ellis and Vaughn avenues (which were four blocks apart), and southward of Sixth street, there were in the neighborhood of 100 residences which were occupied, and that the citizens occupying that property would either cross the railroad track by Ellis or Fourth avenues, if open, or Vaughn avenue, if Fourth were closed, in going to the business part of the city, to the north. This is a part of the territory that was sought to be vacated by the action of the county board in 1860, and the inference is plain that the original owners or their grantors have continued to treat the same as not having been vacated. Moreover, it is alleged in the complaint, and admitted in the answer, that Fourth avenue West, between Third and Front streets, had been opened and worked by the city prior to 1890, as also had been that portion south of Sixth street. Under these circumstances, it would be quite unreasonable to say that the city did not intend to accept the dedication of this portion of the streets between the points mentioned. But, whether this be so or

City of Ashland vs. The Chicago & Northwestern R. Co.

not, under the rule stated in *Racine v. C. & N. W. R. Co.* 92 Wis. 118, unless the city is estopped, the city might signify its acceptance whenever the time arrived that this part of the street was required for actual public use.

The doctrine that a city may be estopped by its acts from claiming that a given locality is a street has been asserted and applied in this state, and is so well settled as to be no longer open to question. *Goodrich v. Milwaukee,* 24 Wis. 436; *Reilly v. Racine,* 51 Wis. 530; *Paine L. Co. v. Oshkosh,* 89 Wis. 449; *Reuter v. Lawe,* 94 Wis. 300. The doctrine is equally well settled that, when lands have been properly dedicated, no mere nonuse for any period of time will operate as an abandonment of the rights so conferred, and that, until the time arrived when the street was needed for actual use, all persons in possession were deemed to hold subject to such rights. In addition to cases before cited, see the following: *Childs v. Nelson,* 69 Wis. 125; *Chase v. Oshkosh,* 81 Wis. 313; *Nicolai v. Davis,* 91 Wis. 370; *Madison v. Mayers,* 97 Wis. 399.

The argument as to nonacceptance and abandonment may be classed together. As already noted, the defendant is in no position to urge either the one or the other. The company to whose rights the defendant has succeeded recognized the existence of the street in the alleged agreement with the city to vacate it, and, unless sufficient appears to work an estoppel, defendant was not justified in closing the street. The alleged estoppel is based upon the finding that the city and the railroad companies entered into an agreement by which the city agreed to vacate the street, and the companies to pay for certain specified improvements in other streets. The proposition of the railroad companies is not based simply on the condition that the city should vacate this one street. It includes a large number of other streets and alleys, and was based upon the condition precedent that the city should not only vacate and discontinue

these various streets and alleys, but should grade down or excavate Vaughn avenue so as to make an undercrossing, and save the companies harmless from any and all damage by reason thereof. Upon the acceptance of this proposition, each company was to pay for excavating not to exceed a certain specified number of cubic yards of earth, and certain other expenses for a box culvert extending along Vaughn avenue from Third to Sixth street.

In the first place, the companies knew, or were bound to know, that the city had no power to make any such contract. The streets of a city are not held to be bought and sold or bargained away at the will of the common council. *Trester v. Sheboygan*, 87 Wis. 496. In the opinion in this case, Mr. Justice WINSLOW says: " Now, no one will contend that the city has the power of sale of a street easement, however it may be acquired. It may by proper proceedings vacate, but it cannot sell, its easement. This is fundamental." Now, how may it vacate? Certainly only by compliance with statutory requirements. Subd. 30, sec. 4, subch. VI, ch. 27, Laws of 1889 (the city charter), gives the power to the council to vacate streets, but does not prescribe how that power shall be exercised. In such case the power could only be exercised as pointed out in *James v. Darlington*, 71 Wis. 173; that is, by following the provisions of the general statute, sec. 904, R. S. 1878. This section required the petition, in writing, of all the owners of lots or lands on any street or alley, and due notice to be published, before the council had authority to act. Any contract to secure such a petition was outside of the usual municipal functions, and, of course, the council had no authority to make it. Thus, at the very outset of their negotiations, the companies knew that they were seeking a contract the city had no authority to make. Any act done, or payment made, relying thereon, was done or made at their peril. The companies knew, or were bound to know, that the ordinance and the preceding

resolutions of acceptance were *ultra vires* and void. They knew, or were bound to know, that the ordinance of December 1, 1887, was repealed by the council June 26, 1888. The case is entirely barren of any evidence of any action on their part between said dates. The money paid by the Lake Shore Company was not paid until July 5, 1888, nine days after the ordinance was repealed. The switch in the center of Fourth avenue "was built between the 4th of December, 1887, and the year 1892," according to the stipulation of the parties; and the bridge across Vaughn avenue was built "before this action was commenced." Just *when* they were built does not appear. If the parties are not able to fix a more definite time, certainly this court cannot presume they were built after the passage of the ordinance of vacation, and before its repeal. Testimony to establish an estoppel against the city must be clear, distinct, and of such a character as to amount to a fraud, to permit it to claim otherwise. The rule is never applied as freely against the public as against private persons. It is only when some affirmative action has been taken, or when there has been some great negligence or delay with relation to some matter upon which the parties have a right to rely, that the court will be authorized to apply the rule, so as to prevent manifest injustice or wrong. *Reuter v. Lawe*, 94 Wis. 300. Such injustice or wrong must be firmly established by facts and circumstances that leave no room for doubt or controversy.

The suggestion that taxes were levied and collected on this property by the town authorities after the attempted vacation by the county board in 1860 is of no great significance. When the dedication is complete, such fact, of itself, will not necessarily affect the rights of the public. *Reuter v. Lawe*, 94 Wis. 300, and cases cited. The testimony on that subject is meager and indefinite. It consists in the mere statement by one of the former owners that, after the attempted vacation, he and other parties " contin-

ued to pay taxes all the time, as lands," until 1872 or 1873. It needs no argument to demonstrate the inconclusive character of such testimony. So, in any aspect we may view the case, it neither appears that the city had abandoned its right to claim the street, nor that it has been guilty of any such delay, or has done any lawful act upon which defendant or its predecessor had a right to rely, sufficient to work an estoppel. We think it sufficiently appears that whatever was done by the companies was done in reliance upon the alleged contract to vacate, and, that having been made without even color of right, it furnishes no proper basis upon which to found an estoppel.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment for the plaintiff as prayed for in the complaint.

A motion for rehearing was submitted on the brief of *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, for the motion, and on that of *E. F. Gleason*, attorney, and *Sanborn, Gleason & Sleight*, of counsel, contra.

The motion was denied February 2, 1900.