Paine Lumber Co. (Limited) vs. The City of Oshkosh.

*By the Court.—* The judgment of the county court is affirmed.

PAINE LUMBER COMPANY (LIMITED), Respondent, vs. THE CITY OF OSHKOSH, Appellant.

*January 15 — February 5, 1895.*

*Municipal corporations: Street dedicated by plat: Abandonment: Estoppel.*

1. Secs. 1294, 1294a, S. & B. Ann. Stats., providing when *highways* shall cease to be considered such or shall be considered legally discontinued, are not applicable to streets dedicated by recorded plat, although sec. 1347 declares that the provisions of the chapter of which said sections are a part "shall extend to all parts of the state, except when special provisions inconsistent therewith shall have been made by law in relation to particular counties, towns, cities, or villages."

2. By a plat recorded in 1859 and a replat recorded in 1870 land in a city was dedicated as a street, but it was never used as such, and in 1874 the common council refused to open it, declaring, in effect, that it would not interfere in the premises. Afterwards, relying on such action of the council, the owners of the fee, at considerable expense, filled up the land in and adjoining such street, which

89   449
d92  123
89   449
94   305
89   449
105  403
89   449
d109 588

was low and swampy, and erected buildings thereon for the pur-
poses of their business, all of which was done openly and to the
knowledge of the city officers and without objection from them.
In 1890 the city authorities took measures to open the street. It
appeared that there was no necessity for the opening, and that it
would work great injury to the owner of the fee. *Held*, that the
city was estopped from exercising, as against such owner, the
rights acquired by the recorded plats.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This action was brought to obtain a perpetual injunction
against the defendant, its officers, agents, etc., restraining
them from opening or attempting to open Henry street be-
tween High street and Pearl street in said city, and from
removing or attempting to remove the fences and buildings
within the said limits of Henry street. The plaintiff claimed
to be the owner of blocks 119 and 122 of the replat of Win-
nebago in the Fifth ward of the city of *Oshkosh*, bounded
on the north by West Algoma street, on the east by High
street, on the south by James street, and on the west by
Pearl street; that all of the premises between Pearl street,
south of West Algoma street, and north of a line running
from the center of James street where it intersects Pearl
street to the Fox river, and between said boundaries to the
Fox river or the center thereof, were owned by the plaint-
iff in fee, and it was in possession thereof, and that they
were used in connection with said blocks 119 and 122 as a
part of the lumber yard of the plaintiff in the Fifth ward
of said city; and that the plaintiff and its grantors had been
in the quiet and peaceable possession of said premises for
more than thirty years. It alleges the making and record-
ing in the office of the register of deeds of said county in
the year 1859 of a replat of Winnebago, and that there was
laid out thereon a street called Henry street, running through
the center of plaintiff's premises from High street to the Fox
river, and it was claimed that this street had never been

opened or worked, nor had any attempt been made to open it until the summer of 1873, but it had remained wholly obstructed since 1853, and had never been used as a public street; that the common council in 1873 refused to open it, since which time the plaintiff had erected divers buildings on its said property in said alleged street, and had been to great expense in filling up the low marsh ground over which it was laid out; and that there was no public necessity for opening or using it. It was insisted that the street had been abandoned and the defendant and its officers were estopped from opening it, and that the right to open and use it had been barred by certain statutes, namely, ch. 253, Laws of 1882, and sec. 1294, S. & B. Ann. Stats. as amended by ch. 102, Laws of 1885; and it was alleged that the common council, August 8, 1890, passed a resolution directing proceedings to be taken for opening said street, and that the officers of the city threatened to open it and remove the fences and buildings of the plaintiff on its said premises, causing plaintiff irreparable injury, etc.

The answer admitted the replatting of Winnebago as alleged in the complaint, and that said block 119 thereof was in 1870 replatted, and such replat was adopted by the common council and duly recorded, and was called "Paine's Subdivision of Block 119" in the replat of Winnebago; that by said replat said Henry street was laid out along the north line of said block, and that it was made by one C. N. Paine as owner, one of the grantors of the plaintiff. It admitted that the petition was presented for the opening of said street in 1873, and that no action was taken to open the street until 1890, and denied the alleged abandonment of the street, and alleged that proceedings had been taken to open it for travel, but that the defendant's officers and ward employees had been forcibly resisted by the agents and servants of the plaintiff.

The court found as facts that the plaintiff was the owner

and in possession of blocks 119 and 122, and it and its grant-
ors had been in possession thereof, including the premises in
question, Henry street, for more than thirty years; that for
more than twenty years before the commencement of the
action the plaintiff had used said blocks, together with the
premises in dispute, to wit, Henry street, running through
the same from High street to Pearl street, as and for part
and parcel of its lumber yard, and that the replat set out in
the complaint, in 1859, was made and recorded, and Henry
street, running through plaintiff's premises, was one half in
said block 119 and one half in block 122, and was equally
distant between West Algoma street on the north and
James street on the south, and runs from High street to the
river, some distance west of Pearl street; that at the time
said replat was made, the Fifth ward, in which the premises
are situate, was sparsely settled, and there were but few
manufacturing establishments along the Fox river; that the
premises in dispute, together with the premises adjoining
said Henry street between High street and Pearl street,
were low, marshy, and wholly impassable as a street when
it was so platted and dedicated on the plat, and, unless filled,
were wholly unfit for public travel; that in the year 1856
plaintiff's grantors built and operated a sawmill a little
north of West Algoma street, and said mill and premises
were subsequently conveyed to the plaintiff, and said mill
and yard had for more than twenty years last past been
used in connection with said blocks 119 and 122 in said
Fifth ward of Oshkosh; that in 1870 C. N. Paine, one of
the grantors of the plaintiff, as the owner of the premises,
replatted said block 119 by straightening the lines, so that
they became perpendicular to High and Pearl streets.

It was further found that Henry street had never been
opened or worked, and no attempt had ever been made on
the part of the defendant to open or work it; that in the
year 1873 a petition was presented to the common council,

praying that it might be opened from High street to the Fox river, and divers proceedings were had thereon between July 31, 1873, and the 5th of November, 1874, when the common council refused to grant said petition, and refused to open said street, of all of which the said plaintiff and its grantors then and subsequent thereto had notice; that since the year 1874 all of said blocks 119 and 122 had been used by the plaintiff and its grantors, including Henry street, for the purposes of a lumber yard and piling lumber thereon, and since the 5th of November, 1874, plaintiff, for the purpose of carrying on its business, had built divers buildings in and upon said street, between High street and Pearl street; that the plaintiff and its grantors had been to very considerable expense in filling the premises known as Henry street, between High street and Pearl street, all of which had been done openly and to the knowledge of the officers of the city; that by reason of West Algoma street on the north side of block 122, and James street on the south side of block 119, and of High and Pearl streets, being public and traveled streets, there was no need or necessity for opening said Henry street between High street and Pearl street; that Henry street, as laid out on said replat of Winnebago, between High street and Pearl street had never been opened, traveled, or worked, and no highway taxes had ever been expended on said premises, and it had never been traveled or used as a route of travel; that the defendant, by its officers and agents, threatened to open said street, and passed a resolution, August, 8, 1890, directing proceedings for that purpose, and would, unless restrained, tear down the buildings of the plaintiff situate thereon; that by reason of the premises the plaintiff would suffer irreparable injury in case said threats of the defendant were carried into execution.

As a conclusion of law the court found that by virtue of sec. 1294, R. S., the premises known and called Henry

street, between High and Pearl streets, had ceased to be a public highway or street. Judgment was entered in favor of the plaintiff, granting a perpetual injunction as prayed for, from which the defendant appealed, and various exceptions were taken by the defendant to the findings of fact and conclusions of law.

*II. I. Weed,* for the appellant, contended, *inter alia,* that until the time arrives when a street is required for actual public use, no mere nonuser, however long continued, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public. *Chase v. Oshkosh,* 81 Wis. 313; *Reilly v. Racine,* 51 id. 526; *State v. Leaver,* 62 id. 387; *Childs v. Nelson,* 69 id. 125. No title by adverse possession can be acquired as against the public, to a street once dedicated to the public use. *Hoadley v. San Francisco,* 50 Cal. 265; Dillon, Mun. Corp. §§ 668-674; Elliott, Roads & Streets, 490, 667, note 5, 668 and notes; *People ex rel. Alvord v. Pope,* 53 Cal. 437; *Sims v. Frankfort,* 79 Ind. 447; *Mayo v. Wood,* 50 Cal. 171. No length of time will render a public nuisance, such as the obstruction of a highway, legal or give the persons guilty of maintaining it any right to continue it to the detriment of the public. Elliott, Roads & Streets, 490; *State v. Phipps,* 4 Ind. 515; *People v. Cunningham,* 1 Denio, 524; *Rhodes v. Whitehead,* 27 Tex. 304. The statute of limitations does not run against public streets. *Reilly v. Racine,* 51 Wis. 526; *State v. Leaver,* 62 id. 387; *Childs v. Nelson,* 69 id. 125; *Galbraith v. Littiech,* 73 Ill. 209; *Quincy v. Jones,* 76 id. 231. Buildings erected on public grounds or highways acquire no rights either on account of time or expenditure. *Philadelphia v. P. & R. R. Co.* 58 Pa. St. 253. A highway once established continues to be such until it is discontinued by the proper officers. The occupation of a part of it by an individual is a mere obstruction and nuisance, and no lapse of time and no acquiescence on the part

Paine Lumber Co. (Limited) vs. The City of Oshkosh.

of the public officers affects the public rights therein. *Driggs v. Phillips*, 103 N. Y. 77; *Comm. v. Moorehead*, 118 Pa. St. 344; *Vicksburg v. Marshall*, 59 Miss. 563; also Wisconsin cases already cited. The general highway statutes do not apply to the city of *Oshkosh*, as special powers contravening the provisions of the statute are given the city. Sec. 1347, R. S. *Chase v. Oshkosh*, 81 Wis. 313; *Cross v. Morristown*, 18 N. J. Eq. 305; *Indianapolis v. Croas*, 7 Ind. 9. The public can only be divested of its rights in a platted street by proceedings in court. Secs. 2265, 2266, R. S.; *Indianapolis v. Croas*, 7 Ind. 9; *James v. Darlington*, 71 Wis. 173. The decision of the city authorities as to opening a street, in the absence of fraud, is final and conclusive. *Kelley v. Milwaukee*, 18 Wis. 83; *State v. Leaver*, 62 id. 387; *Chase v. Oshkosh*, 81 id. 313; Dillon, Mun. Corp. §§ 84, 95, 832; Elliott, Roads & Streets, 351, 352.

For the respondent there was a brief by *Felker, Stewart & Felker*, and oral argument by *Charles W. Felker*.

PINNEY, J. 1. The appellant claims that the premises in dispute, by reason of the replats mentioned, which were recorded, respectively, in 1859 and in 1870, became a public street of the city, which it has the right, through its officers, to now open for public travel; and the plaintiff resists this claim on the ground that the city and its officers are estopped by matter *in pais* from enforcing such claim. The replats so made and recorded by the proprietors of the lands operated as a statutory dedication and conveyance of the land intended to be for streets, alleys, ways, commons, or other public uses, and it is held in the corporate name of the city, in trust for the uses and purposes expressed and intended. R. S. sec. 2263; *Gardiner v. Tisdale*, 2 Wis. 153. The fee did not pass, but only the use in trust for the purposes specified. The proprietors or lot owners retained the fee on either side to the center of the street (*Kimball v.*

*Kenosha*, 4 Wis. 321; *Weisbrod v. C. & N. W. R. Co.* 18 Wis.
35; *Pettibone v. Hamilton*, 40 Wis. 402); and no formal ac-
ceptance by the public authorities was necessary (*Williams
v. Smith*, 22 Wis. 594; *Pettibone v. Hamilton, supra*). The
part of Henry street between High street and the Fox river
on the south has never been opened to public travel or im-
proved as a street, and the circuit court held that the right
of the city authorities to open and fit it for travel had been
barred by sec. 1294, S. & B. Ann. Stats., which provides
that "every *public highway* already *laid out*, or which shall
hereafter be *laid out*, shall cease to be considered a public
highway at the expiration of four years from the time it was
so *laid out*, except such parts thereof as shall have been
opened and worked within such time;" and sec. 1294*a* pro-
vides that "any highway which shall have been or may
hereafter be entirely abandoned as a route of travel, and on
which no highway tax has been expended for five years,
shall be considered legally discontinued, and the land of such
highway shall revert to the owners of the land through
which the same passed." Sec. 1296 provides that "when
any highway shall be discontinued, the same shall belong to
the owner or owners of the adjoining lands." Sec. 1294 is a
part of ch. 52, and sec. 1347 in that chapter declares that
"the provisions of this chapter shall extend to all parts of
the state, except when special provisions inconsistent there-
with shall have been made by law in relation to particular
counties, towns, cities, or villages." It is contended that, in-
asmuch as there is no provision of the city charter inconsist-
ent with sec. 1294, therefore that section applies to the case,
and that Henry street, within the limits specified, has ceased
to be a public street of the city, and that the city has no
right to open and improve it.

In *Reilly v. Racine*, 51 Wis. 526, which arose in 1880,
when sec. 1294 was in force, it was held that: "Until
the time arrives when any street or part of a street is re-

quired for actual public use, and when the public authorities may be properly called upon to open it for a public use, no mere nonuser of any length of time will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public." The language of the statutes referred to shows plainly that they are not applicable to streets dedicated or granted by recorded plat, operating as a statutory conveyance. Such streets are not highways within their purview and meaning. "The word 'highway' may be construed to include any road laid out by the authority of the United States, of the territory of Wisconsin, or of this state, or of any county, or town, city, or village." R. S. sec. 4971, subd. 5. In *State v. Paine Lumber Co.* 84 Wis. 206, a prosecution against this plaintiff for obstructing this street under the provisions of sec. 1326, ch. 52, R. S., it was said: "What, then, is the plain meaning of the word 'highway?' Does it mean a strip of land which the municipality has a right to open as a highway, but which in fact has never been opened or capable of use by the public? We think the question must be answered in the negative." It was not the purpose of sec. 1347 to make all the provisions of ch. 52 applicable to a city, irrespective of their character, although not in conflict with any provision of its charter. The adaptability of the provision and the plain indication of the language used must be regarded in construing those provisions, regard being had to the subject matter to be affected. It certainly could not have been the intention that sec. 1294 should be applicable to streets *dedicated* by recorded plat, instead of streets *laid out* by the public authorities, so that at the expiration of five years after the recording, and when the city was increasing in population, wealth, and importance, all parts of streets not opened, traveled, or worked should at once revert to the proprietor or his grantee, involving embarrassments and inconvenience which the legislature could

never have intended.    We hold, therefore, that the statutes
secs. 1294, 1294a, are inapplicable to the present case.

2.  Whether the present is a case to which a court of equity
should apply the doctrine of estoppel *in pais,* and hold, under
the special circumstances, not that the street granted by the
plats had reverted, but that the city, as representing the
public, is concluded from now opening the street for public
use after what has transpired, is a question of no little diffi-
culty and importance.    A period of nearly twenty years
had elapsed after the latest replat, during which great
changes had taken place and important interests grown up;
and it is evident that to permit the street to be now opened
will cause great inconvenience and damage to the plaintiff,
which may well be regarded as irreparable.   Henry street,
from High street to Pearl street, and so to the Fox river, a
short distance on the west, was low, wet, swampy land, and
could only be made available for street or other purposes by
considerable expenditure in filling it up; and the plaintiff
and its grantors occupied the land as part of their extensive
lumber yards adjacent to the mills.    West Algoma street
and James street on the north and south were near to and
parallel with Henry street, and it seems that there is no real
necessity for now opening the latter street.    It was first
platted in 1859.    Application was made to the city council
to open it from High street to Fox river, and after various
proceedings the council, about a year thereafter,— Novem-
ber 5, 1874,— refused to do so; declaring that "it was best
to let the parties interested determine the matter;" and this
was practically a declaration on the part of the council that
it would not interfere in the premises.    Afterwards the
plaintiff and its grantors, with the knowledge of this action
and relying on it, proceeded to improve their property in-
cluded within the bounds of the street by filling up the low
and swampy grounds at considerable expense, and erected
for the purpose of their business divers buildings in and

upon the same, all of which was done openly and to the knowledge of the city officers and, so far as appears, without objection or protest. After a lapse of seventeen years, when the part of the street in question appears to have become a seat of important industries, and of no material importance to the public, the city authorities have taken measures to open it. It is material to note that this is not a case of mere *nonuser* of a public street. The declaration of the common council has the force and effect of an affirmative act, upon the faith of which the plaintiff and its grantors might well regulate their conduct in respect to their rights as abutting owners and owners of the fee subject to the alleged easement, and they acted accordingly, with the result already stated.

It was contended that the city was not estopped under the circumstances from opening the street; that the city officers could not alienate the public rights; and that neither neglect nor positive acts of disclaimer *in pais* would lay the foundation for an equitable estoppel against the rights of the public, and very many authorities were cited to that effect. The city authorities have charge of and represent the rights of the public in and to the public streets, and it has been held, and we think with great reason, that under circumstances such as are presented the city and its officers will be held bound by an estoppel *in pais*, to prevent injustice, from insisting upon and exercising as against the present plaintiff the rights acquired by the recorded plats. This principle was recognized and applied in *Goodrich v. Milwaukee*, 24 Wis. 436, 437; and in *Reilly v. Racine*, 51 Wis. 530, it was held that negligence and unreasonable delay in opening a street might work an abandonment of it by nonuser, and it was said that "the questions of public necessity, negligence, and delay in any given case are questions of fact to be determined on evidence." Were it otherwise, the conduct and acquiescence of the city and its officers would have all the

effect of a fraud as against the plaintiff, and upon well-established principles these questions are open to proof in an equitable action to enforce such an estoppel. In Dillon, Mun. Corp. sec. 675, after adverting to the state of the authorities on this subject, it is said that, while the "corporation does not own and cannot alienate the public streets or places, and no mere laches on its part or on the part of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public;" that "it will perhaps be found that cases sometimes arise of such a character that justice requires that an equitable estoppel should be asserted even against the public;" and that "there is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require." This view is a reasonable and conservative one, and calculated to properly protect the rights of the public as well as the individual, and it is in harmony with what has already been held in this state, and has been adopted by the courts of other states in recent cases. *Chicago, R. I. & P. R. Co. v. Joliet*, 79 Ill. 26; *Lee v. Mound Station*, 118 Ill. 316; *Chicago & N. W. R. Co. v. People ex rel. Elgin*, 91 Ill. 254, 255; *Simplot v. Dubuque*, 49 Iowa, 630; *Bell v. Burlington*, 68 Iowa, 296; *Sanderson v. Cerro Gordo Co.* 80 Iowa, 89; *Cheek v. Aurora*, 92 Ind. 114. We find no difficulty in holding that the facts of this case bring it within this rule. The evidence is made a part of the record by the defendant, and shows the facts more in detail than the finding, and is uncontradicted. Upon the entire record the judgment is correct.

*By the Court.*— The judgment of the circuit court is affirmed.