CITY OF RACINE, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*December 20, 1895 — January 7, 1896.*

*Railroads: Restoring street at crossing: Unopened street: Estoppel.*

1. A city street is a "highway," within the meaning of the charter of a railroad company, providing that it may construct its railroad across any highway but shall restore the same to its former state or so as not to impair its usefulness.

2. Where, under such a charter, the company constructs its railroad across a city street which at that point has not been opened and fitted for use, the right of the city to have the street restored so as not to impair its usefulness will not be lost by any mere delay, however long continued, in opening that part of the street for travel. *Paine Lumber Co. v. Oshkosh*, 89 Wis. 449, distinguished.

APPEAL from an order of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Affirmed.*

This was an action for a mandatory injunction to compel the defendant to build a suitable viaduct or passageway under its track across Tenth street in said city, and to restore said street to its former condition, so as not to impair its usefulness. The defendant appealed from an order overruling its demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.

The complaint alleged, in substance, that in 1849 section 16 in said city, being a part of the school lands of the state, was laid out and platted as a town-site, into blocks, lots, streets, alleys, and public grounds, by the authority of the state, and a street named Tenth street, sixty feet wide, running in an east and west direction, was designated on such plat, and laid out and dedicated to the public use as a street or highway; that this street terminated at the west line of said section, but, at a point about 260 feet east of said terminus, said street was at an elevation of about fifty-two feet above the *datum* line or water level of Root river, in said

City of Racine vs. Chicago & Northwestern R. Co.

city, and descended over a steep slope into a valley about five feet above such *datum* line; that said street had been kept open for public use and travel since it was so laid out, up to the present time, except that the part below the brink of said slope had never been put in a condition for travel, and had never been brought to the established grade; but that it could be put in such condition for its entire length by so grading it. In 1855 the Green Bay, Milwaukee & Chicago Railroad Company, incorporated by ch. 262, Laws of 1851, built and constructed its road, crossing said street at nearly a right angle about 180 feet east of its western terminus and eighty feet west of the brink of said slope; and said company raised an embankment at that point from fifteen to eighteen feet, and built its road thereon, thereby totally obstructing said street at the point aforesaid. The company, by sec. 9 of its charter, was authorized to construct said road across said street; but it was required to restore said street to its former condition, in a manner so as not to impair its usefulness, but this the company had failed and neglected to do. When the railroad was built, the west line of said section 16 was the west line of the corporate limits of the city, and the lands west of that line had not been platted or settled; but in 1876 the city limits were extended, and a street forming a continuance of said Tenth street was laid out, and dedicated for public use, and opened for travel; and a large number of dwellings now stand on and along such extension, and the grading and improvement of Tenth street have become necessary, and the plaintiff city has decided to grade the same to the established grade, and put it in condition for travel with teams, etc., but it is impossible to so grade and improve said street until said embankment is removed or a suitable viaduct is built and opened through it by the defendant. The defendant is now the owner of said railroad, and successor to all the rights and obligations of the Green Bay, Milwaukee & Chicago

Railroad Company, and bound to restore said street, etc.; and having been requested, March 4, 1892, by said plaintiff to build a proper viaduct and restore said street by June 1st of that year, the same being a reasonable time for that purpose, it neglected and refused so to do.

For the appellant the cause was submitted on the briefs of *Winkler, Flanders, Smith, Bottum & Vilas.* They cited *State v. Paine Lumber Co.* 84 Wis. 206; *Paine Lumber Co. v. Oshkosh,* 89 id. 449; *Chicago, M. & St. P. R. Co. v. Milwaukee,* id. 506.

*C. C. Gittings,* for the respondent, cited *State ex rel. Minneapolis v. St. P., M. & M. R. Co.* 35 Minn. 131; *State ex rel. Minneapolis v. M. & St. L. R. Co.* 39 id. 219; *Fort Dodge v. M. & St. L. R. Co.* 87 Iowa, 389; *Parker v. Truesdale,* 54 Minn. 241; *Reilly v. Racine,* 51 Wis. 526; *Maire v. Kruse,* 85 id. 302; *Paine Lumber Co. v. Oshkosh,* 89 id. 449; *Hatch v. S. B. & N. Y. R. Co.* 50 Hun, 64; *Wayzata v. G. N. R. Co.* 50 Minn. 438; *Lathrop v. Cent. I. R. Co.* 69 Iowa, 105.

PINNEY, J.  The charter of the Green Bay, Milwaukee & Chicago Railroad Company (sec. 9, ch. 262, Laws of 1851) provided that "the said company may construct the said railroad across any public or private road, highway, stream of water or watercourse, if the same be necessary, but the said company shall restore such road, highway," etc., "to its former state, or in a sufficient manner not to impair the usefulness of said road, highway," etc., "to the owner or to the public." The franchises conferred and the duties imposed upon that company have devolved upon the defendant, its successor in interest and duty. And a street within the limits of a city is undoubtedly a highway, within the sense and meaning of this act. A subsequent enactment (R. S. sec. 1836) requires every corporation "constructing, owning or using a railroad, to restore every  .  .  .  street, high-

City of Racine vs. Chicago & Northwestern R. Co.

way, plank road, etc., across, along or upon which such railroad may be constructed, to its former state, or to *such condition* that its usefulness shall not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad."

As a period of forty-three years had expired after the making of the plat and dedication of the *locus in quo* before any attempt was made to open and use it as a street, it was insisted that there was no longer any street or highway at this point, and that the public had lost its rights by such delay to open it, and by reason of such long-continued use of it by the railroad company; that if it still had the right to extend the street, under the original dedication, across the embankment of the railroad company, it could not be so extended at its expense. In the case of *Reilly v. Racine*, 51 Wis. 526, it was held that "until the time arrives when a street or part of a street is required for actual public use, and when the public authorities may properly be called upon to open it for such use, *no mere nonuser*, however long continued, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public." *Maire v. Kruse*, 85 Wis. 302, 305; *Paine Lumber Co. v. Oshkosh*, 89 Wis. 449. Until the time arrives when a street or part of a street is required to be opened for actual public use, it cannot properly be said that laches is to be imputed to the city or to the railroad company. The company entered upon the use of the *locus in quo* in subordination to the right of the city to open, improve, and fit this particular portion of the street for public use and travel, and in no sense whatever as an adverse claimant, and it cannot now be allowed to repudiate the condition of the franchise which it obtained. The provision of its charter and of the general statute must be construed liberally in favor of the public, and strongly against the company. The object of these provisions was the preservation

of the larger and more important interests of the public in its streets, highways, and public places; and when, at any subsequent period, it might be deemed necessary to open and fit for public use a street or highway, or part of a street or highway, already dedicated as such, but not theretofore opened, the company is clearly bound to discharge, in respect to it, the prescribed statutory duty. Such unopened street is clearly within the purview of the statute, although not a "highway" within the meaning of R. S. sec. 1326, prescribing a penalty for obstructing a highway. *State v. Paine Lumber Co.* 84 Wis. 205. In such case the gravamen of the offense consists in the embarrassment and hindrance of public use of the street and travel caused by the obstruction of a street *already opened* and in public use. It certainly could not have been contemplated by the legislation in question that the power of towns and cities to open and use streets or highways already platted and laid out, so as to meet the requirements of growth and expansion, should be limited or circumscribed by the fact that railroads had been constructed across them, or that the companies might in such cases acquire, as against the public, the dominant right. Sound public policy and the obvious sense and purpose of this legislation require that such incipient highways be regarded as within its salutary provisions, and the right to relief in the present case may well be rested upon the provision of the charter of the company.

As between the company and the state, its grant of franchises is to be construed strictly against the company. The principle is "that all rights which are asserted against the state must be clearly defined, and not raised by inference or presumption, and if the charter is silent about a power it does not exist. If, on a fair reading of the charter, reasonable doubts arise as to the proper interpretation to be given to it, those doubts are to be solved in favor of the state; and when it is susceptible of two meanings, the one restricting

and the other extending the powers of the corporation, that construction is to be adopted which works least harm to the state." *Charles River Bridge v. Warren Bridge*, 11 Pet. 544; *Binghamton Bridge*, 3 Wall. 75. The streets are for the public use, and the city acts in respect to them under a governmental power delegated by the legislature, and not in virtue of its strictly corporate functions. Viewed in respect to the provisions of sec. 1836, R. S., the same principle would be applicable, and the same result would follow.

These views are not inconsistent with the case of *Paine Lumber Co. v. Oshkosh*, 89 Wis. 449, which was not, as there observed, a case of *mere nonuser*, but of estoppel *in pais*, based upon the affirmative act of the common council in refusing to open the street there in question, upon the faith of which the plaintiff and its grantors had acted in erecting buildings, etc. There was here no breach of the defendant's duty in the premises until it became necessary to open and fit the part of the street in question for public use, in 1892. Under these circumstances, it cannot be justly said that the plaintiff has lost, by acquiescence, the right upon which it is now insisting.

For these reasons, the demurrer to the complaint was rightly overruled.

*By the Court.*— The order of the circuit court is affirmed.