CITY OF SUPERIOR, imp., Respondent, vs. NORTHWESTERN FUEL COMPANY, Appellant.

*December 7, 1916—January 16, 1917.*

*Plats of land: Record: Statutory requirements: Substantial compliance: Map, legend, and certificate taken together: Streets: Dedication: Riparian rights: Municipal corporations: Estoppel as to rights of public in streets, etc.: Stipulation as to remedy: Effect on determination of issues.*

1. Where the original of a plat is not produced, it must be assumed that it was in accordance with the record thereof.
2. Even though the makers of a plat, which was certified and acknowledged by the owners and duly filed for record, did not comply with secs. 2260–2264, R. S. 1878, in that the map does not show on its face the center lines of the streets, or that monuments were placed at the beginning and terminus of each street, or the material of which such monuments were constructed, and the respective ownerships are not properly indicated thereon, yet, there being a legend upon the map which describes in detail the lands platted, the courses and distances of the boundaries, the size and location of the lots, the manner in which the beginnings and termini of the streets were indicated, the location of monuments, the dimensions and locations of alleys, and the material of which monuments were constructed,—so that every material fact required by statute to be exhibited upon the map can be definitely ascertained and located; and the certificate of the surveyor being full and complete and stating that he had fully complied with the law in surveying, subdividing, and mapping the premises, it is *held* that the map, the legend, and the certificate of the surveyor taken together constitute a substantial compliance with the statutory requirements and show a statutory dedication of the streets.
3. It appearing from such map and legend that the plattors intended to extend Superior street (afterwards called Hill avenue) in the city of Superior northerly to the shore of the St. Louis river (Bay of Superior), such street was thereby dedicated to the public use accordingly and the public became vested with the right to pass over a strip of the submerged land lying between the shore line at the end of the street and the dock line established by the United States, such strip being bounded by lines drawn from the thread of the stream and at right angles therewith to the points where the boundaries of the street intersect the shore line of the river.

4. It appearing that the city of Superior never used or occupied the northerly end of said street and that the same had never been opened for public travel; that the city accepted a later plat upon which the strip above mentioned was not shown as a street but with other submerged lands lying between the shore line and the dock line was included within block lines; that the defendant purchased said strip and adjoining lands in accordance with the later plat and in reliance thereon and proceeded to make extensive and valuable improvements thereon, including a large coal dock costing several hundred thousand dollars; that the city made no objection, but on the contrary recognized defendant's ownership of the lands and taxed them accordingly; and that the opening of a public way through the property would greatly damage defendant's plant and permanently impair its usefulness,—it is *held* that the city is estopped from asserting any claim or interest in the premises owned by defendant on account of any rights which the city or the public acquired by the extension of Superior street to the shore line of the river, as shown in the first plat.

5. The fact that the parties to the action made a stipulation to the effect that if the claim of the city should be upheld it should be entitled, in lieu of its rights over the strip mentioned, to similar rights over another strip, cannot be considered in determining the issues in the case, since such determination must be based upon the facts as they existed when the action was begun.

6. The city authorities have charge of and represent the rights of the public in and to the public streets, and their acts may be such as to lay the foundation for an equitable estoppel against the assertion of such rights; but in order that such an estoppel *in pais* may arise there must be inequitable conduct on the part of the city and irreparable injury to persons honestly and in good faith relying thereon.

Appeal from a judgment of the circuit court for Douglas county: G. N. Risjord, Judge. *Reversed.*

Action to establish boundaries and to quiet title to certain lands abutting on the St. Louis river and that part thereof commonly known as the Bay of Superior. The facts material on this appeal are as follows:

On June 13, 1882, Hiram Robbins owned certain lands in the northeast quarter of the southeast quarter of section 14, and Vincent Roy and Lisette Roy owned certain lands in

lot 2 of section 13, all in township 49 north, of range 14 west. On that day the owners of these several tracts united in the making and execution of a plat, known as Exhibit A, the essential part of which is shown in the diagram on p. 634. The center of Superior street where the same is of the width of 100 feet is on the section line between sections 13 and 14. The name of Superior street was afterwards changed to Hill avenue, by which name it will be hereinafter designated. That part of Hill avenue which is adjacent to the east side of the northeast quarter of the southeast quarter is 100 feet in width; that part thereof lying northerly is 50 feet in width, the section line forming the center of Hill avenue where it is 100 feet wide and the westerly boundary thereof where it is 50 feet wide. Attached to the map was the certificate of the surveyor substantially in the form required by the law as it then was. The plat was also certified and acknowledged by the owners of the property embraced within the plat and was on said day duly filed for record in the office of the register of deeds of Douglas county. That part of Hill avenue lying northerly of Bay street has never been worked or traveled, and until the erection of the coal dock hereinafter referred to there was no settlement or travel that required it to be worked.

On the 12th day of January, 1881, the makers of the plat had united in the conveyance of a right of way to the Northern Pacific Railway Company 100 feet in width, covered by the waters of the St. Louis river or the Bay of Superior, the location of which right of way is indicated on Exhibit 2 and marked "Northern Pacific Right of Way." Shortly after the conveyance the railroad was completed thereon and ever since that time it has been operated over the center of the strip of land so conveyed. The rails were first laid on trestles, and thereafter the right of way was filled in, so that at the time of the commencement of this action there was but little water between the railroad track and the shore.

ESSENTIAL PART OF EXHIBIT A

On the 11th day of December, 1885, Lisette Roy, being the owner of the land lying between Water street and the Bay of Superior, sold the same to Stanley Dwight, and on December 31, 1885, Stanley Dwight conveyed the same to the Land

ESSENTIAL PART
OF
EXHIBIT 2

& River Improvement Company.   On November 12, 1900, the Land & River Company, being the successor of the Land & River Improvement Company, having acquired title to all of the lands lying north of Roy's Addition in section 14, caused a plat of said lands and the lands which it had acquired from Lisette Roy to be made and filed.   This plat is

known as Sweetzer's Division, Exhibit 2, the essential part of which is shown in the diagram on page 635. This plat was duly accepted by resolution of the board of public works of the city of *Superior* and certified by its city clerk. Point A on Exhibit 2 corresponds to point A on Exhibit A, and point B on Exhibit 2 corresponds to point B on Exhibit A. After the plat had been made and filed and accepted by the city of *Superior* in February, 1901, the *Northwestern Fuel Company* (hereinafter called the *Fuel Company*) purchased from the Land & River Company blocks 503 and 504 and other lands according to the Sweetzer Division plat. The court found that there was no evidence in the case as to whether or not the officers of the defendant *Fuel Company* had actual knowledge of the existence of Roy's plat or of any claim on the part of the city of *Superior* or the public to Superior street or Hill avenue or any riparian rights of the city or public to lands extending beyond said Hill avenue from the shore. Immediately after the purchase of the property the *Fuel Company* commenced to make very extensive improvements by erecting coal docks at an expense of several hundred thousand dollars.

On March 14, 1902, the city of *Superior* entered into a contract with the *Fuel Company* for the temporary erection and maintenance of a sewer over and across lot 6 of block 504, in which it was recited and stated that the defendant *Fuel Company* was the owner of all the lands conveyed to it by the Land & River Company, the city, however, having the right to occupy a designated part of the same for sewer purposes. After the *Fuel Company* had purchased the land in question the city of *Superior* assessed it and levied taxes thereon, which the defendant *Fuel Company* paid. In October, 1905, the present action was begun by the Northwestern Coal & Dock Company, and the city of *Superior* and the defendant *Fuel Company* were made parties defendant. The defendant city answered February 6, 1906, and then asserted for the first

time the claim that, Hill avenue having been platted and laid out and opened to the shore or water line of the St. Louis river or Bay of Superior, the same had been dedicated to public use; that such dedication had been accepted by the city of *Superior,* and that all the rights and privileges appurtenant thereto were then vested in and belonged to the city of *Superior,* and that the city of *Superior* had the exclusive right and privilege, by reason of the dedication thereof to a public use, to hold, maintain, occupy, and improve the submerged land or water overflowing the same in front of Hill avenue and the full width thereof from its terminus on the shore or bank of the St. Louis river or Bay of Superior to the established dock line in front of the same. The premises affected by the claim of the city of *Superior* correspond in a general way to lot 1 of block 504 as it appears on Exhibit 2. The *Fuel Company* answered denying the right of the city of *Superior* to the property in question for the uses stated, and alleged that Hill avenue was never legally laid out or dedicated and that the city of *Superior* was estopped by reason of the platting of said Sweetzer Division, the acceptance and recording thereof, the purchase by the defendant of the property mentioned, and by the improvement thereof, from setting up any claim to any part of Hill avenue beyond the southwest end of lot 1 of block 504.

The issue thus made up was tried before the court. Findings were made embodying the facts as stated and other facts which will be referred to in the opinion; and the judgment of the court established a right of way in the public in Hill avenue or Superior street to the bay or river shore and from that point to the thread of the stream of the St. Louis river, the same to be bounded by dropping lines at right angles to the thread of the stream so that they will strike the boundary lines of Superior street as they reach the shore line as shown on Roy's plat, which lines were fifty feet apart measured at right angles to the street, the westerly street line being also

the section line between sections 13 and 14. The boundaries of the street as established over the submerged portions of the land would correspond in a general way with lot 1 of block 504 as shown on Exhibit 2.

From a judgment entered in accordance with the findings and a stipulation of the parties the *Fuel Company* appeals.

For the appellant there was a brief by *Luse, Powell & Luse,* attorneys, and *A. E. Boyesen,* of counsel, and oral argument by *L. K. Luse* and *C. Z. Luse.*

For the respondent the cause was submitted on the brief of *H. V. Gard* and *T. L. McIntosh.*

ROSENBERRY, J. It is claimed that the making, acknowledging, certifying, and filing of the plat known as Roy's Addition (Exhibit A) did not amount to a statutory dedication for the reason that the makers thereof did not comply with the statutes relating thereto. At the time the plat was executed secs. 2260 to 2264, R. S. 1878, were in force. So far as material they are as follows:

"Section 2260. Any person owning any tract of land, wherever situated, wishing to divide the same into lots, streets and alleys, for the purpose of sale or assessment or both, may cause the same to be accurately surveyed and divided into lots, or lots and blocks, streets and alleys, commons or public grounds as he may choose. The boundaries of all lots containing an area of more than one acre, and of all blocks, streets and alleys, shall be marked and established in the field by suitable monuments, placed at all the corners of each such lot and block, and at the beginning and terminus of each street and at every angle of a street."

"Section 2261. The following requirements shall be fully complied with to entitle a map made under the provisions of the preceding section to be recorded:

"First. On the face of the map it shall appear: . . .

"3. The length and courses of all exterior boundary lines and of the boundary lines of all lots or other subdivisions designated on the map and the center line of all streets, when

:such center line is not used as a boundary line, shall be noted in their proper places.

"4. All monuments erected in the field must be represented in their proper places thereon, and the kind of material of which such monument is composed noted at the representation thereof. . . .

"Second. On the back of every such map offered for record shall appear and be written the certificate of the surveyor who surveyed and mapped the land, . . ."

The plat is said to be deficient in the following respects: (1) The center lines of the streets do not appear on the face of the map. (2) The map does not show that monuments were placed at the beginning and terminus of each street, and the kind of material of which the monuments were constructed. (3) The respective ownerships are not properly indicated on the map.

The original map was not introduced in evidence, but in lieu thereof a certified copy of the record thereof in the office of the register of deeds was offered and received. Upon the map is a legend describing in great detail the lands platted, the courses and distances of the boundaries, the size and location of the lots, the manner in which the beginnings and termini of the streets were indicated, the location of. monuments, the dimensions and locations of alleys, and the material of which monuments were constructed; so that by the aid of the legend every material fact required by the statute to be exhibited upon the map can be definitely ascertained and located. The certificate of the surveyor was full and complete, and he certified that he had fully complied with the provisions of ch. 101 of the Revised Statutes of 1878 in surveying, subdividing, and mapping the said premises. The original not being produced, we must assume that the original map was in accordance with the record. However, we are of the opinion that the map, the legend thereon, and the certificate of the surveyor must be taken together, and that when so considered they constitute a substantial compliance

with the requirements of the statute, and that therefore there was a statutory dedication of the lands embraced within the plat known as Roy's Addition.

It furthermore appears from the map and legend that it was the intention of the plattors to extend Superior street to the southwesterly shore of the St. Louis river or Bay of Superior. In describing that part of the exterior boundary beginning at the point where the northeasterly line of Water street intersects the easterly line of Superior street or Hill avenue (Exhibit A), the legend says: "thence north 270 feet to the Bay of Superior, thence running northwesterly along said bay 80 feet, thence south 3,300 feet." There could have been no other purpose in the making of this jog than to extend Superior street (Hill avenue) north to the southwesterly shore of the Bay of Superior or the St. Louis river.

Under well established principles of law, the street being thus dedicated to the shore line of the river, the public became vested with the right to pass over that part of the submerged land lying between the shore and the dock line as established by the United States, the boundaries of said strip to be determined by dropping lines at right angles to the thread of the stream to the points where the boundaries of Hill avenue intersected the shore of the river. It is thus clear that the city had the right claimed by it to the strip in question, and the judgment must be sustained unless the city is estopped by its conduct from now asserting that right to the disadvantage of the defendant. This court has said:

"It was contended that the city was not estopped under the circumstances from opening the street; that the city officers could not alienate the public rights; and that neither neglect nor positive acts of disclaimer *in pais* would lay the foundation for an equitable estoppel against the rights of the public, and very many authorities were cited to that effect. The city authorities have charge of and represent the rights of the public in and to the public streets, and it has been held, and we think with great reason, that under circumstances such as are

presented the city and its officers will be held bound by an estoppel *in pais,* to prevent injustice, from insisting upon and exercising as against the present plaintiff the rights acquired by the recorded plats." *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 459, 61 N. W. 1108.

The court also approved of the law as stated by Dillon (Mun. Corp. sec. 675), as follows:

"While the [municipal] 'corporation does not own and·cannot alienate the public streets or places, and no mere laches on its part or on the part of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public.' . . . 'It will perhaps be found that cases sometimes arise of such a character that justice requires that an equitable estoppel should be asserted even against the public.' . . . 'There is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, as this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require.' " *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 460, 61 N. W. 1108.

See, also, *Racine v. C. & N. W. R. Co.* 92 Wis. 118, 65 N. W. 857; *Ashland v. C. & N. W. R. Co.* 105 Wis. 398, 80 N. W. 1101; *Davis v. Appleton,* 109 Wis. 580, 85 N. W. 515; *Ashland v. N. P. R. Co.* 119 Wis. 204, 96 N. W. 688; *Arnold v. Volkman,* 123 Wis. 54, 101 N. W. 158.

In order that an estoppel *in pais* may arise there must be (1) inequitable conduct on the part of the city, and (2) irreparable injury to parties honestly and in good faith acting in reliance thereon.

In addition to the fact that the city had never used or occupied that part of Hill avenue lying north of the northerly line of Bay street and that the same had never been opened for public travel, it appears that in 1900, upon the application of the Land & River Company, the city solemnly accepted a plat of the premises in question, replatting the premises in-

volved in this action, and in its whole extent no doubt conferring many valuable rights upon the public by way of dedication. It is hardly to be supposed that the city authorities did this without sufficient consideration, and no doubt for the reason that, balancing the gains against the losses, if any, they thought the public interest would be promoted by the acceptance of the plat of Sweetzer's Division. After the plat of Sweetzer's Division had been approved by the public authorities and recorded as required by law, the *Fuel Company* purchased blocks 503 and 504 in accordance with the plat of the Sweetzer Division and in reliance upon it. Further relying upon this affirmative conduct on the part of the city, the *Fuel Company* commenced the erection of very valuable and expensive improvements upon the property in question. Two years thereafter the city, dealing with the *Fuel Company,* acknowledged the ownership of the *Fuel Company,* and in fact never asserted any rights as against the *Fuel Company* until it was brought into court by a third party.

The trial court found that the improvements made by the defendant upon said property consisted of a large coal dock constructed at an expense of several hundred thousand dollars. While it was stipulated by the parties that if the plaintiff should recover in this action it should be entitled, in lieu of the riparian rights extending out from Hill avenue, to the same rights, privileges, and easements or public way to and over submerged land in lots 1 and 2 in block 503, that fact cannot be considered in the determination of the issues in this case. The determination of this case must be based upon the facts as they existed at the time the action was begun. If upon these facts the city is entitled to judgment, then its rights are by the stipulation to be transferred to lots 1 and 2 of block 503.

While the improvements placed upon lot 1 of block 504 prior to the making of the stipulation were not of themselves extensive, the improvements placed upon the remainder of

the property were extensive and of such a character that material and important changes in the plant would be made necessary by the opening of a waterway through the property which should be traveled and used by the public, resulting in damage to the *Fuel Company* estimated at the sum of $100,000, in addition to permanently impairing its usefulness. We think the facts in this case bring it clearly within the rule stated in *Paine L. Co. v. Oshkosh,* 89 Wis. 449, 61 N. W. 1108, and that the city of *Superior,* by reason of its acceptance of the plat, recognition of the *Fuel Company's* rights therein, permitting improvements of an extensive and valuable character to be made thereon without objection, and taxing the property as if owned by the *Fuel Company,* is estopped, in view of the nature and character of the improvements made in reliance upon the conduct of the city, from asserting any interest in any part of the premises owned by the *Fuel Company* on account of any rights the city or the public may have acquired by reason of the extension of Superior street or Hill avenue to the shore line of the river as shown in the plat of Roy's Addition.

*By the Court.*—Judgment reversed, with directions to the trial court to enter judgment for the *Northwestern Fuel Company* confirming its title to blocks 503 and 504, Sweetzer's Division, free and clear of any interest or claim therein on the part of the city of *Superior* or the public by reason of the extension of Superior street or Hill avenue to the shore line of the St. Louis river or the Bay of Superior as shown in the plat of Roy's Addition.