CITY OF JEFFERSON, Appellant, v. EIFFLER, Respondent.

*February 8—March 6, 1962.*

For the appellant there was a brief and oral argument by *Robert D. Sundby* of Madison.

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* and *Hamilton T. Hoyt* of counsel, all of Milwaukee, and oral argument by *Hamilton T. Hoyt.*

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison, legal counsel for the League of Wisconsin Municipalities.

DIETERICH, J.    All other defendants joined in this action failed to answer and were in default. The documentary evidence was stipulated and there was no material conflict in the testimony of the witnesses. The evidence is voluminous. For the sake of brevity only those facts considered pertinent are recited.

The original plat of the village of Jefferson was recorded in 1838. It showed block 5 therein as consisting of eight lots, four on the east side of the block and four on the west, with a 16-foot alley down the center of the block from north to south.

"The commissioners who laid out and recorded said plat were appointed by the Wisconsin Territorial legislature (Acts of 1837–1838, No. 34) to lay out the seat of justice for Jefferson county . . . pursuant to Statute I, ch. 169, 18th congress, May 26, 1824, granting to counties . . . of the . . . territories the right of pre-emption to one-quarter section of government land for the establishment of seats of justice.[1]

---

[1] Taken from paragraph three of a stipulation entered into between the parties dated February 7, 1961.

"On said plat, block 5 was shown as bounded on the east by Main street, on the south by Milwaukee street and on the north by Racine street, with a 16-foot alley running from north to south midway between the east boundary and the west boundary of the block." [2] Block 5 is bounded on the west by the Chicago & North Western Railway Company right of way.

The city seeks a declaratory judgment against all private lot owners (the city owns the two northern lots on the west side of block 5) in the block establishing that it holds an easement for alley purposes in the entire platted 16-foot strip. The only private owner to defend this action was Earl W. Eiffler, who owns the southern two lots on the east side of the block (lots 3 and 4) with some exceptions as to their respective total descriptions. Eiffler claims title to the south one half of the platted 16-foot alley strip abutting lots 3 and 4 by reason of a conveyance to him, by warranty deed dated and recorded June 13, 1958, of said lots containing the following language:

"All of lots 3 and 4, and the alley adjoining the same on the west side thereof, in block 5, of the original plat of the city of Jefferson [with certain exceptions]."

The stipulation sets forth that Eiffler traces his chain of title to Lucy Stamm who on March 26, 1885, was the owner of lots 3, 4, 5, and 6. On that date she conveyed lots 5 and 6 to one Abram Fernholz, exclusive of the alley, referring to the alley as being vacated. On June 13, 1887, by warranty deed, Lucy Stamm conveyed to Edward Mueller, lots 3 and 4 with the identical language relative to the alley quoted above. Edward Mueller conveyed said property to his son in 1921, again with this same language, and the son in turn conveyed to Eiffler. Though the above-mentioned deeds state that the alley in block 5 was vacated, there is no official record of

[2] Paragraph four of the stipulation dated February 7, 1961.

such vacating. The city of Jefferson entered three exhibits. They consisted of affidavits of the register of deeds of Jefferson county, county clerk of Jefferson county, and the city clerk of the city of Jefferson, all to the effect that they have not been able to find any document or record relating to a vacating of the alley.

Stipulations entered into by the parties indicate the following actions have taken place which affect the alley in block 5. In 1870, the board of trustees of the village of Jefferson passed a motion for the purpose of opening all streets in the original plat. On page 154 of the minutes of the common council of the city of Jefferson in volume labeled April 16, 1878, to October 3, 1899, is recorded a resolution charging that no person shall be permitted to discharge any firearms, or shoot off a firecracker, etc., upon any of the streets or alleys bordering or running through certain enumerated blocks, including block 5. At page 200 of this same volume it is recorded that at a meeting of the common council held Friday, June 13, 1884, the council passed a resolution directing the street commissioner to grade the alley through block 3, the same as through block 5.

There is no dispute as to the north one half of the platted alley, it having been used by the public for vehicular purposes for more than twenty years prior to the commencement of the present action.

The south one half of the platted alley has always constituted a portion of the lawn of the Jefferson House, a hotel located on lot 4. The south boundary of the platted alley has been closed by a fence at least since 1866. A fence crossed the north boundary of the south half of the alley in 1866, and no one knows how long that fence remained. From at least 1890, until sometime after 1942, when removed by the city, a building (approximately eight by 14 feet) on a brick foundation was maintained on the north end of the south half of the platted alley. This building was used at various times

by the hotel as an outhouse for hotel guests, a place to generate gas for use in the hotel prior to the advent of electricity, a chicken coop, a dog kennel, and a storage place for tools.

At the center line of the south one half of the platted alley the ground drops sharply to the west, the west line of the platted alley being seven feet lower than at the center line; this portion of the alley was never used for public traffic.

In 1866, a store owner on lots 1 and 2 brought an action against the owner of the Jefferson House alleging that the use of the alley was necessary and essential to his business and that all of the owners of lots in block 5 desire to use the alley except the defendants, who maintained a strong fence blocking access to the alley at the south line and the center of the block from east to west. The result of the case was not decisive on whether the allegations in the complaint were true.

The assessment and tax rolls of the city show that since 1911, no description of lots 3 and 4, block 5, for assessment and tax purposes has included the disputed area. (No assessment and tax rolls are available for the period before 1911.)

The alley is shown as a public alley on the official street-numbering map of 1958, the zoning map effective in 1959, and the official street map effective in 1960. However, the Jefferson county plat book prepared in 1941, shows the alley platted in block 5 as only in the north half thereof and the south half of block 5 is shown as having no platted alley at all.

There exist three other evidences of the vacating of the alley in block 5. The first is an easement granted to Wisconsin Gas & Electric Company dated October 10, 1928, for construction of a gas main across lots 3 and 4 in block 5, "together with the vacated alley joining the same on the

west." The second is a grant of sewer rights to Jefferson County Bank recorded August 9, 1921, which stated that the bank was the owner of a portion of lot 3, block 5, including the east one half of a vacated alley in the rear thereof. The last is a warranty deed to the city of Jefferson recorded May 24, 1927, of a portion of lot 7, block 5, "subject to a certain drain easement granted to the Jefferson County Bank" (describing the foregoing instrument granting sewer rights).

In 1936, the Racine street bridge was constructed in such a manner that the ramp leading to the bridge to the north of the platted alley left a clearance of only 10 feet at that point, thus preventing easy access to the alley and to the utility property of the city, located on lots 7 and 8, via Racine street. The superintendent of the city water and light department testified that he had been urging the city to open the alley for the past thirteen years (length of time he had been superintendent), and that in his opinion there has been a need for the alley to be opened ever since 1900, when a city well was drilled in that area. It was also his testimony that the opening of the alley would be desirable as it would allow for the construction of a storm sewer to take care of excess storm-water drainage across utility property. That a 26,000 volt switching, metering, and control station was constructed in August, 1960, and there is a 55-foot pole located on city-owned lots 7 and 8, block 5, which terminates and dead-ends the 26,000 volt transmission lines which are the principal power lines supplying the city. Because heavy traffic cannot use the alley from the north, such traffic drives across the city lots or utility property and endangers the pole.

In 1959 and 1960, the district engineer of the state board of health recommended that vehicular traffic across the

utility property be denied because of danger to water-supply wells. The present action was commenced November 16, 1960.

Under the undisputed facts in the instant action we hold that at the time the commissioners recorded the original plat the dedication and acceptance were complete, and that the rule set forth in the case of *Reilly v. Racine* (1881), 51 Wis. 526, 529, 8 N. W. 417,[3] is controlling. The applicable language of the *Reilly Case* is as follows:

"But where the state, by authority of law, makes a city plat of its own land, and thereby dedicates the streets and other public grounds marked thereon to the public use, the same high public authority that makes the dedication, by the same act accepts it on behalf of the public. The dedication and its acceptance are in the same public act. The proposition is self-evident."

The defendant Eiffler relies on the *Reilly Case* for two other rules (p. 529):

"Until the time arrives when any street or part of a street is required for actual public use, and when the public authorities may be properly called upon to open it for the public use, no mere nonuser, of any length of time, will operate as an abandonment of it, and all persons in possession of it will be presumed to hold subject to the paramount right of the public."

The second rule, which defendant contends controls this action, is (*Reilly v. Racine, supra,* p. 530):

"After such time arrives when the public use requires it, and the public authorities *may be properly called upon* to open a street or part of a street to the public use, then negligence and unreasonable delay in opening the same *may* work an abandonment of it by nonuser. The questions of such

[3] The *Reilly Case* particularly, as well as other Wisconsin cases, are dealt with in Anno. 171 A. L. R. 94, 118, Estoppel of municipalities to open or use street.

public necessity, negligence, and delay, in any given case, are questions of fact, to be determined on evidence." (Emphasis supplied.)

The trial court agreed with defendant and determined that the crucial question involved in this action was: "Has, the city of Jefferson been guilty of negligence or unreasonable delay in opening the alley after the public use required it?" Whether this question properly phrases the issue presented by the rule of law laid down in the *Reilly Case* is the problem now before this court. While there are no Wisconsin cases in which unreasonable delay by a municipality was shown in opening a street or alley after public necessity dictated such opening, subsequent cases have restated and clarified the language of the *Reilly Case*. These cases are entitled to the same weight accorded the language in the *Reilly Case* on which defendant relies.

*Paine Lumber Co. v. Oshkosh* (1895), 89 Wis. 449, 459, 460, 61 N. W. 1108, quotes the *Reilly Case* and comments as follows:

". . . in *Reilly* . . . it was held that negligence and unreasonable delay in opening a street might work an abandonment of it by nonuser, and it was said that 'the questions of public necessity, negligence, and delay in any given case are questions of fact to be determined on evidence.' Were it otherwise, the conduct and acquiescence of the city and its officers would have all the effect of a fraud as against the plaintiff, and upon well-established principles *these questions are open to proof in an equitable action to enforce such an estoppel.* In Dillon, Mun. Corp. sec. 675, . . . it is said that, while the 'corporation does not own and cannot alienate the public streets or places, and no mere laches on its part or on the part of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more-persuasive force in the particular case than those of the public;' . . . 'this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances

of the case to hold the public estopped or not, as right and justice may require.'" (Emphasis supplied.)

The statement made in the *Reilly Case* is ambiguous in two respects: First, there is the requirement that (a) public use requires the opening of the street, and (b) that the public authorities be properly called upon to open the street for public use. What is required in order to properly call upon the public authorities is an open question. There is no evidence in this record which would establish that a petition or other form of proper plea was ever made by citizens of the city of Jefferson to open the south half of the platted alley in block 5. Secondly, the language of the *Reilly Case* stated that "negligence and unreasonable delay in opening the same *may* work an abandonment." The inference is clear; negligence and unreasonable delay by themselves are not sufficient to constitute abandonment; other extenuating circumstances must be shown. What other facts it is necessary to prove is a question answered by cases subsequent to the *Reilly Case*.

One of the circumstances which it is necessary to establish is a manifest abuse of discretion by the common council. The common council is the judge of the public necessity for opening up its streets and alleys and as to whether any public convenience or use will be subserved thereby.[4] The public use is the dominant interest, and the public authorities are the exclusive judges when and to what extent the street shall be improved. Courts can interfere only in cases of fraud or oppression, constituting manifest abuse of discretion.[5] If proved, "manifest abuse of discretion" by the common council constitutes one of two elements necessary to establish estoppel in an equitable action.

In order that an estoppel *in pais* may arise there must be (1) inequitable conduct on the part of the city, and (2) ir-

[4] *Klinkert v. Racine* (1922), 177 Wis. 200, 188 N. W. 72.
[5] *Chase v. Oshkosh* (1892), 81 Wis. 313, 317, 51 N. W. 560.

reparable injury to parties honestly and in good faith acting in reliance thereon.[6] Testimony to establish an estoppel against the city must be clear, distinct, and of such a character as to amount to a fraud, to permit it to claim otherwise. The rule is never applied as freely against the public as against private persons. It is only when some affirmative action has been taken, or when there has been some great negligence or delay with relation to some matter upon which the parties have a right to rely, that the court will be authorized to apply the rule, so as to prevent manifest injustice or wrong.[7] An abuse of discretion by the common council in the instant action was not "firmly established by facts and circumstances that leave no room for doubt or controversy."[8] In the present action, the principal reasons for opening the alley did not occur until the recommendation of the engineer from the board of health in 1959, and the building of the power substation in 1960.

The record does not disclose any evidence which would support a finding that Eiffler would suffer any irreparable injury because he had relied in good faith on any acts by the city in refusing to open the platted alley in block 5.

The issue then of whether the potential harm to the defendant in allowing the city to open the alley is so great as to become an injustice which requires the application of the principles of estoppel as against the public right must be answered in the negative.

The attitude of this court in cases in which equitable estoppel is applied to public lands is well expressed by the following language found in *Klinkert v. Racine* (1922), 177 Wis. 200, 206, 188 N. W. 72:

[6] *Superior v. Northwestern Fuel Co.* (1917), 164 Wis. 631, 641, 161 N. W. 9.

[7] *Reuter v. Lawe* (1896), 94 Wis. 300, 68 N. W. 955.

[8] *Ashland v. Chicago & N. W. R. Co.* (1900), 105 Wis. 398, 405, 80 N. W. 1101.

"In *Arnold v. Volkman* . . . this court, by Mr. Justice WINSLOW, said:

" 'This court has uniformly taken advanced ground in favor of the public on the question of the loss of rights in public streets by nonuser or abandonment. The cases are numerous, and it is unnecessary to consider them in detail. Their effect is to hold that municipal corporations cannot sell the streets, nor will mere laches or nonuser on the part of the authorities or the public suffice to defeat public rights, but that cases may arise where private rights and interests have grown up, founded upon the nonaction or action, as the case may be, of the public, so that the prevention of injustice will require the application of the well-understood principles of estoppel as against the public right.' "

In the instant case the trial court determined that the city of Jefferson was guilty of negligence and unreasonable delay in opening the alley in block 5, after the public use required it and consequently abandoned its right of easement in the dedicated alley. However, mere negligence on the part of the city does not equate estoppel. It is our conclusion that Eiffler cannot prevail against the claimed easement right of the city to the alley unless he can prove either estoppel or vacation of the alley. For reasons hereinbefore stated the evidence will not sustain a finding of estoppel.

The trial court made no finding or determination with respect to the issue of vacation. The deeds executed more than thirty years prior to the trial, which contained statements that the alley had been vacated, were admissible as ancient documents and were pertinent, but not controlling, evidence on the issue of vacation. Cf. *Dickinson v. Smith* (1907), 134 Wis. 6, 14, 114 N. W. 133. Therefore, the cause should be remanded for trial of such issue.

*By the Court.*—That portion of the judgment appealed from is reversed, and cause remanded for a new trial on the issue of whether or not there was ever a vacating of that part of the platted alley in block 5 by the city of Jefferson adjoin-

ing the defendant Eiffler's premises. Appellant's application, to include in its taxation of costs the allowable expense of printing its entire brief although it exceeds 50 pages in length, is granted.